UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | Case No. 23-CR-402 (APM) |
| : | |
| v. : | |
| : | |
| **CHARLES GENERAL,** : | |
| : | |
| **Defendant.** : | |
| : | |

**GOVERNMENT'S SUPPLEMENTAL AND OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following supplemental and opposition to defendant's motion to suppress. Defendant General now relies on *United States v. Di Re*, 332 U.S. 581, 589, 68 S. Ct. 222, 92 L. Ed. 210 (1948), in support of his contention that this Court should suppress all the evidence in the case. *See* Defendant's Response Motion ECF #47 at 1. As outlined more fully *infra*, the defendant's reliance on *Di Re* is misplaced and simply legal support.

## ARGUMENT

I. **The Search of Defendant General Was Permissible Incident to Arrest for Publicly Smoking Marijuana**

Officers in this case had probable cause to arrest defendant General under D.C. Code § 48-911.01 (public consumption of marijuana),[1] and thus D.C. Code § 48-921.02a does not come into

---

[1] The District of Columbia Marijuana Possession Decriminalization Amendment Act ("MPDAA"), introduced in 2013, and enacted on March 31, 2014, created, inter alia, a new misdemeanor offense for smoking or otherwise consuming marijuana in public. *See* D.C. Code § 48-911.01. Section 48-911.01(a) provides:
> Notwithstanding any other District law, it is unlawful for any person to smoke or otherwise consume marijuana in or upon a public space, or in or upon any of the following places: (1) A street, alley, park, sidewalk, or parking area; (2) A vehicle

1

play. Simply stated, § 48-921.02a only matters if the Court does not believe the officers had probable cause to arrest defendant General (or if the Court wants to make an alternative ruling in order to preserve the record). Significantly, however, the plain language of § 48-921.01 makes clear that police properly considered the odor of marijuana in their encounter with defendant General.

More broadly, in analyzing a particular statute text, our Circuit court has outlined, "[i]f the text" of a statute "is clear, [the Court] must enforce the statute as written." *United States v. Marsh*, 829 F.3d 705, 708 (D.C. Cir. 2016). "[The Court's] inquiry must cease if the statutory language is unambiguous . . . and the statutory scheme is coherent and consistent." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 412 (2011) (internal quotation marks omitted). Here, D.C. Code § 48-921.02a provides:

> Except as provided in subsection (b) of this section, none of the following shall, individually or in combination with each other, constitute reasonable articulable suspicion of a crime:
> (1) The odor of marijuana or burnt marijuana;
> (2) The possession of or the suspicion of possession of marijuana without evidence of quantity in excess of 1 ounce;
> (3) The possession of multiple containers of marijuana without evidence of quantity in excess of 1 ounce; or (4) The possession of marijuana in proximity to any amount of cash or currency without evidence of marijuana quantity in excess of one ounce.

The plain language of § 48-921.02a only prohibits police from considering certain factors "individually or in combination with each other" to support "reasonable articulable suspicion of a

---

in or upon any street, alley, park, or parking area; or (3) Any place to which the public is invited. For purposes of this subsection, and notwithstanding any other provision of law, a private club, which includes any building, facility, or premises used or operated by an organization or association for a common avocational purpose, such as a fraternal, social, educational, or recreational purposes, is a place to which the public is invited; provided that a private club does not include a private residence.

crime." It is prudent to take each of those clauses in turn:

***"[I]ndividually or in combination with each other"***: The language of the statute makes clear that the odor of marijuana does not alone provide reasonable articulable suspicion. Nor could the odor of marijuana together with the possession of multiple containers of marijuana provide reasonable articulable suspicion (unless there were evidence of more than one ounce). However, the odor of marijuana could be used together with other factors not listed in § 48-921.02a – for example, a statement from a suspect, the proximity of drug paraphernalia, or a tip from an informant. In the instant case, the additional, permissible factor is that the officers saw defendant General actually smoking. Put differently, it was not just the smell, but also the smoke – which is visible on Body Worn Camera of the officers – that gave the police reasonable articulable suspicion (at least) to stop the defendant to investigate the offense of public consumption of marijuana. *See Carlson v. Postal Regulatory Comm'n*, 938 F.3d 337, 350 (D.C. Cir. 2019) ("[W]hen the statutory text is clear, legislative history should not be used to muddy its meaning."). Even so, the legislative history of § 48-921.02a supports reading the statute to allow the consideration of the enumerated factors in conjunction with non-enumerated factors to form reasonable articulable suspicion. In discussing "what circumstances no longer constitute reasonable articulable suspicion of a crime," the D.C. Council Committee on the Judiciary and Public Safety addressed the D.C. Court of Appeal's prior holdings "that a law enforcement officer who smells marijuana has probable cause to believe that a quantity of marijuana is present." D.C. Council, Report on Bill 20-409, at 9 (Jan. 15, 2014). The Committee recommended amending the D.C. Code to clarify that "there would be no basis for believing that a crime has been committed if the only evidence was the smell of marijuana." *Id*. (emphasis supplied). Importantly, the Committee Report stated: "[T]his amendment does not require the

3

police to ignore the odor of marijuana. It merely states that an officer must have additional evidence before reasonably believing an individual has committed a crime." *Id*. at 10.

Notably, the District of Columbia Court of Appeals adopted this interpretation of the statute, noted *supra*, in an unpublished ruling. *See* Government's Exhibit 1. Indeed, the plain language and the legislative history of D.C. Code § 48-911.01 supported a broad reading of "public space" that includes a parking lot that is open to the public.

On the facts and testimony heard in the motion to suppress hearing in the instant case, police had not only reasonable articulable suspicion, but in fact probable cause, for public consumption of marijuana under D.C. Code § 48-911.01 given (1) the smell of marijuana, (2) the puff of smoke, and (3) the defendant's location in a public parking lot when the officers made their observation. The statute does not purport to prevent police from relying on the smell of marijuana to inform their belief as to probable cause. In any event, for the same reasons stated above, it would make no sense for them to be prohibited from doing so. Finally, D.C. Circuit case law supports the use of the smell of marijuana in formulating probable cause. *See, e.g., United States v. Sheffield*, 832 F.3d 296, 305 (D.C. Cir. 2016) ("In this case, the district court found that one officer smelled the "faint" scent of "fresh marijuana," and saw an abnormally large number of air fresheners throughout the car, which in the officers' experience was consistent with efforts to disguise narcotics odors. Finding no clear error in those fact findings, we hold that the officers had probable cause.") (internal citation omitted).

Moreover, while this Court need not address the question of reasonable articulable suspicion in this case, the United States submits that § 48-921.02a cannot redefine the constitutional doctrine of "reasonable articulable suspicion" by subtracting certain factors from the constitutional calculus. In *Virginia v. Moore*, 553 U.S. 164, 174-78 (2008), the Supreme Court

4

held that while a state is free to regulate or restrict arrests beyond what the Fourth Amendment requires, "its choice of a more restrictive option does not render the less restrictive ones . . . unconstitutional." Consequently, where the alleged police conduct is constitutional but violates state law, state law must provide its own remedy to an aggrieved defendant. *See id*. at 174. The D.C. Code does not specify a remedy for violations of § 48-921.02a, and *Moore, supra,* establishes that the Fourth Amendment's exclusionary rule is not available to a defendant as a remedy for an alleged statutory violation.

Significantly, Section 48-921.02a, however, only addresses "reasonable articulable suspicion," which is a concept associated with a brief investigatory stop made by an officer on less than probable cause. *Duhart*, 589 A.2d at 897 (*citing Terry*, 392 U.S. at 9). On its face, the statute does not address circumstances where an officer has probable cause to arrest and therefore does not supersede the probable cause calculus articulated by the Supreme Court or this Court. See § 48-921.02a. ***Because the officers in this case had probable cause and not just reasonable suspicion that criminal activity was afoot, § 48-921.02a does not apply.*** [2]

Significantly, as further outlined by the DCCA, an officer may rely on his training and experience with the detection and identification of illegal drugs in determining probable cause. *Wilson v. United States*, 802 A.2d 367, 372 (D.C. 2002) (grounds for a *Terry* stop increased to probable cause when veteran officer familiar with odor and packaging of PCP both recognized the smell coming from appellant and saw tin foils removed from appellant's companion); *Ball v. United States*, 803 A.2d 971, 980-81 (D.C. 2002) (probable cause found where officer experienced with drug arrests knew that medicine bottles can be used as containers for illegal drugs); *Durant*

---

[2] Indeed, the D.C. Council created an enforceable criminal offense of public marijuana consumption at the same time it passed § 48-921.02a, apparently seeing no tension between the two statutory provisions. *See* D.C. Council, Act 20-305.

*v. United States*, 292 A.2d 157, 158 n.2 (D.C. 1972) (officer's training and experience with narcotics violations was sufficient to warrant belief that narcotics transaction occurred). Indeed, an officer's recognition of the smell of illegal drugs may constitute probable cause on its own. *Minnick v. United States*, 607 A.2d 519, 525 (D.C. 1992) (officer who smelled and recognized aroma of PCP coming from vehicle had probable cause to search the vehicle). The officer must, however, be able to articulate and reasonably link the unmistakable odor of illegal drugs to a specific person or persons at the time of arrest. *Butler*, 102 A.3d at 741-42.[3]

Finally, assuming *arguendo*, even if defendant General was correct in that police violated his non-custodial arrest policy (*see* Def. Ex. 1 (Metropolitan Police Academy, 10.2 Marijuana Offenses, p.6)), his argument does not warrant suppression of any evidence in this case. As the Seventh Circuit has well-stated, "[i]f compliance with departmental [police] policy were decisive, the Fourth Amendment's reasonableness standard would 'vary from place to place and from time to time.'" *United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017) (quoting *Whren v. United States*, 517 U.S. 806, 815 (1996)). "Put another way, a police officer's compliance with the rules of his department is neither sufficient nor necessary to satisfy the Fourth Amendment's reasonableness requirement." *Id.* Accordingly, where, as here, police might have violated an internal policy regarding when to effect a non-custodial versus a custodial arrest, but nonetheless

---

[3] While this Court need not address the question in this case, the United States submits that § 48-921.02a cannot redefine the constitutional doctrine of "reasonable articulable suspicion" by subtracting certain factors from the constitutional calculus. In *Moore*, 553 U.S. at 174-78, the Supreme Court held that while a state is free to regulate or restrict arrests beyond what the Fourth Amendment requires, "its choice of a more restrictive option does not render the less restrictive ones . . . unconstitutional." Consequently, where the alleged police conduct is constitutional but violates state law, state law must provide its own remedy to an aggrieved defendant. *See id.* at 174. The MPDAA did not specify a remedy for violations of § 48-921.02a, and *Moore* establishes that the Fourth Amendment's exclusionary rule is not available to appellant as a remedy for an alleged statutory violation.

6

have complied with their Constitutional obligations, the exclusionary rule is not the appropriate mechanism for remedying any wrong done to the defendant. Rather, defendant General is free to pursue a civil or administrative complaint.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the United States respectfully requests that the Defendant's Motion to Suppress Evidence be DENIED.

    Respectfully submitted,

    JEANINE FERRIS PIRRO
    UNITED STATES ATTORNEY

By:   */s/Emory V. Cole*
    Emory V. Cole
    PA. Bar #49136
    Assistant United States Attorney
    United States Attorney Office – D.C.
    601 D Street, N.W.
    Washington, D.C. 20530
    E-mail: Emory.Cole@usdoj.gov